All right, we will move on now to the second case of the day. Kimberly Nelson versus the City of Chicago and others. Appeal number 20-1279. And we'll hear first from Ms. Donald Kyea. May I start, Your Honor? Please. Good morning, Your Honors. May it please the court, I'm Attorney Brinell Donald Chey, and we are here because the District Court should not have granted the motion to dismiss against my client's case because her third complaint cured every deficiency. The first thing I did as an attorney is watch the opinion and watch the cases that the judge determined were the cases she was going to rely on to dismiss the case. I looked at Milkowicks. I looked at Wilson, DeShaney, Sanders, Brown, and other cases the judge determined. And I looked and determined that the facts were nowhere near the facts that we're dealing with today. I also noticed that the plaintiffs in those cases, many of them was the plaintiff was at fault for not doing their job or taking money, or they were fighting over coughing breaks and things like that, which were state remedies were involved. And then the other cases she cited for the motion dismiss, she said, well, these were cases where they were a private violence that had nothing to do with the state, so the 14th Amendment was not implicated. Then I went over and read the appellee's brief, and it said Monel and Lewis and other cases that the appellees depended on to say that her motion to dismiss was correct. But when you look at the facts of our case, and you look at the law of Monel and Lewis, even the cases that the appellees cited, you will know that the facts and the law is on the side of our client, Kimberly Nelson. Now on December 8, 2016, Kimberly Nelson's a police officer. She gets a radio call, hey, there's an armed robbery in progress, FedEx drivers being arrested or being robbed. So she hits the gas, she flies over, she's saying, I need more info dispatch, give me a little more info, she's getting close, a little more info, and she's getting closer, emergency, emergency, I need more info, I'm on the scene, emergency, emergency, radio silence. She gets there, she's in a high crime neighborhood, an armed robbery's in progress, she's got no backup and radio silence. She sees a black male running toward her as fast as she can. She has to look to determine whether it's the offender with the gun who's robbing somebody or is it the victim, the FedEx guy. So she determines it's the FedEx guy. He jumps into her car. He says, hey, the guy had a gun to my head, I thought I had a gun. She pulls off, she drives away. She gets back to the station to talk to her superior, which is Sergeant Bucky. She says, hey, Sergeant Bucky, did you see what was going on? You see that I was out there by myself? You see that it was a dangerous situation? And she says, I didn't hear anything. And she said, you didn't hear anything? Well, why don't you listen to the radio transmission? I'm not listening to that. Well, why don't you do an investigation? I'm not doing that. Yes, sir. Can I ask you a question? Sure. I understand that what you've described is frightening. It's the up front edge of police work. Yes. And that your client believes she was let down by headquarters. Where I have trouble with this case is seeing how any of this adds up to a constitutional violation. Yes, sir. Or precedents where courts have treated these sorts of disputes about the way police responded to emergencies with constitutional claims as between the individual police officers. Yes. Can you direct us to anything comparable? Yes, Your Honor. What I would say is that I did look for cases. Of course, we do look for cases that were similar to our case. And our case is kind of a special kind of case in that the fact that the action here that caused, police officers are always in potential danger. We know that. The actual danger, the shock, the conscious behavior here is that radio silence while my client was in a life or death situation. The shock, the conscious behavior is there was no alerting or correcting of dispatch that an officer was out there. Not only that, no backup was sent for my client. She's out there in this armed robbery all by herself. Radio silence with someone jumping in the car and this armed boss, which is Bucky, to, hey, at least listen to it, at least do an investigation, at least do something. And what does Bucky tell her? How do we know this is injurious and intentional conduct? Bucky, her supervisor tells her, I don't have to talk to you, and I'm not doing anything. That behavior, the potential danger of going to that scene, and then the actual danger she was in after the radio silence and after nothing was done, that's affirmative behavior that caused my client's PTSD. It caused her to no longer even have a job since this happened. Not only that, she's got a pension now that she's getting. She's not going to get promoted. She's not going to get accolades. She's not going to get awards. Nothing's going to happen. And the fact that we're fighting for 75% of the state court, appellate court says give her 75%, police is still giving her 50% of her pay till date. And so what I'm saying to you, your honor, is that this wasn't some mere negligence. This wasn't, my client wasn't placed in some endangering situation. Imagine this happened in the courtroom and there's an armed robbery going on and the sheriff and the police, nobody does anything. And then they say, well, we didn't hear or see anything. And then officer Bucky, Bufo, who is the sergeant, who's buddy with Bucky, decides he's going to change the report that my client put in. My client put in a report indicating radio silence. I was crying emergency. Nobody answered. He deleted that out of her report. And then not only that, he went down and deleted the victim statement. I had a gun to my head. My life was in danger. I thought I was going to die. And what did the report say after Bufo had his time with it? Officer arrived on scene. Black man ran toward her. She left. Totally minimizing and destroying the horror, the terror, the lack of conscience, the shocking kind of conscience behavior of Bucky, the sergeant who's supposed to have my clients back out there. There are other officers that can be our loved ones that can be put in the same position that Kim Nelson was in that night. Thank God she didn't get two bullets to the chest or a bullet to the brain for us to understand. Shocked the conscious behavior didn't require her to die that night. It didn't require her to have bullets in her chest fighting for her life. But she is fighting for her life. PTSD every single day is ongoing. Now they're going to say Bufo did not do anything. Well, my client found this out three months later. It exacerbated her PTSD to know that her horror of that night was minimized, mitigated, covered up by this other officer with this code of silence. Counsel, thank you. Your time has expired. Thank you for your time, Your Honor. Have a blessed day. For the defense, Ms. McLaughlin. May it please the court. Plaintiff alleges she suffered a workplace injury. That type of issue is governed by state law and the pension system, but not the federal constitution. The district court correctly dismissed plaintiff's third amended complaint. Plaintiff failed to allege plausible substantive due process claims against either defendant sergeant. Her procedural due process claim against Sergeant Bucky is waived and lacks merit, and plaintiff failed to allege a Monel claim against the city. Beginning with substantive due process, it's well established that its scope is extremely limited. Plaintiff had to allege that her injury was caused by conduct so egregious as to shock the conscience. As a general rule, that's affirmative conduct intended to cause harm, and we have nothing like that here. Sergeant Bucky was allegedly inattentive to the police radio communications and did not intervene on plaintiff's behalf with the dispatcher. That did not violate the constitution because Sergeant Bucky had no constitutional duty to protect plaintiff from the risks of her job as a police officer. Generally, the government has no obligation to protect a person from violence by private actors. If plaintiff attempts to rely on an exception to that principle, the state created danger theory, she cannot allege a plausible state created danger claim. Sergeant Bucky did not affirmatively act to put plaintiff in danger. Rather, as a police officer, plaintiff's job was to respond to this incident. In fact, the Supreme Court has explicitly, in Collins v. City of Harker Heights, rejected the argument that the risks of one's job as a government employee amounts to a state created danger. Judge Hamilton, you asked for comparable cases, and in response to that, I point to Harker Heights, as well as this court's decision in Witkowski v. Milwaukee County, in which this court held that disregarding a known risk to a public employee does not violate the constitution, whether or not the risk comes to pass. As to Sergeant Boffo, his edits to plaintiff's case report also were not conscious shocking conduct. Accepting plaintiff's allegations, that was at most a violation of CPD policies. Furthermore, the edits did not plausibly cause plaintiff's injury. She alleges that she stopped working due to her PTSD in December of 2016, and that she did not learn of the edits until three months later in March of 2017. Ms. McLaughlin, what is the plaintiff's current status with the police department? As I understand it, and as plaintiff has mentioned today, she's receiving a duty disability and is currently litigating that in state court. Plaintiff's procedural due process claim against Sergeant Buckey is waived. The district court held that she waived the claim by failing to respond to the defendant's arguments for dismissal, and she has not addressed the waiver holding in her briefing to this court. Besides that, the claim fails. She was not deprived of a property interest without due process. She was not terminated. She never has explained what process she was due or why the process that she has received is insufficient. Let me stop you for a moment, Ms. McLaughlin. You cited a moment ago, you said Collins against Harker Heights and Wachowski against Milwaukee County. I don't see those in your list of authorities. Do you have citations for them? I have a, so the, yes, I do. And these are specific applications of a point that we made in our brief about state-created danger being a necessary exception to the Duchenne principle about protecting the private sector. So those sites are Collins 503 U.S. 115 and Wachowski versus Milwaukee County 480 F3rd 511. Thank you. Finally, plaintiff's Monell claim fails. There is no constitutional violation here, period. But in addition to that, to hold the city liable, plaintiff would have to allege facts showing a city policy was the moving force behind her alleged injury. She has alleged a quote, code of misconduct and custom of deliberate indifference. Those are not factual allegations. They do not come close to stating a plausible claim that she was injured by a city policy. To conclude, we request that the court affirm the judgment of the district court. Thank you, Ms. McLaughlin, a rebuttal, Mr. Klein, you're speaking to the plaintiff. Morning, your honors. What talking about Michalski is one example. Of two years after Michalski, the Seventh Circuit in the con case, he clearly stated an officer's job is a property interest. Job is a property interest. And it's it's undisputed with the cowboys facts. That the protected property interest is continued employment as a in that case, it was a tenured village fire inspector. So what what procedure do you think was called for under these circumstances that would have remedied a violation? Thank you, your honor. So as far as the process that. Officer Nelson started was she contacted. Sergeant Bucky right after the emergency situation. And what's also significant is that Bucky heard that call and they did meet right after. So to me, it shows how not credible Bucky is. But so the procedural process started, which is part of the policy and guideline. Nelson reports. To Bucky, what happened and then. Nelson also makes clear she wants to see get a copy of the of the transfer of the dispatch interaction. So so knows that first, what adverse action was taken against plaintiff without a prior notice and opportunity to be heard? I don't I don't see that element of a procedural due process. What the advert action was the conduct of Bucky. Triggered PTSD. This is a 15 year officer. No attendance issues was working for at least a couple years without any problems. And this the conduct triggered the PTSD which. For more than four years since this armed robbery situation, she has been unable. Nelson has been unable to work. I mean, he was a 15 year officer, so that's certainly to me and add. A strong example of an adverse action. And as far as so the process she started and. Up. She wanted to get a copy of the of the transcript and and Bucky did not. Bucky needed to sign OK to get the for that transcript to be retained, but Bucky didn't do it. Didn't sign it and Bucky didn't tell her lieutenant, which would have been the next step to say that that Nelson wants to see the transcript. So that was so the transcript of this interaction was never never retained. Thank you, counsel. Thank you, counsel. We've heard our thanks to all counsel and the case is taken under advisement.